**Aaron FINK, Petitioner,**

**v.**

**SECURITIES AND EXCHANGE COM-MISSION, Respondent.**

**Docket 33275.**

United States Court of Appeals Second Circuit.

Argued Oct. 7, 1969.

Decided Oct. 27, 1969.

Milton Norman, New York City (Koen-igsberg, Norman & Drangel, New York City, on the brief), for petitioner.

Paul Gonson, Asst. Gen. Counsel, S. E. C., Washington, D. C. (Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., and Harvey A. Rowen, Atty., S. E. C., Washington, D. C., on the brief), for re-spondent.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge.

Aaron Fink, petitioner, was employed as a registered representative for the broker-dealer firm of Richard Bruce & Company (Bruce & Co.) from June 1960 to November 1962. During the first part of 1962, Bruce & Co. served as managing underwriter for a Regulation A[1] issue of securities by Honig's-Park-way, Inc. (Honig's).

In a private proceeding brought by the Securities and Exchange Commis-sion (the Commission) against Bruce & Co., the Hearing Examiner found that both before and after the effective date of an amended notification under Regu-

---

1. Regulation A, 17 C.F.R. 230.251 et seq., permits, under appropriate circumstances, issuance by a corporation of shares whose total value does not exceed $300,000 with-out registration of the issue, provided notification is filed with the Commission prior to issuance. An offering circular is required to be delivered to the customers within a certain time period, and no shares may be offered until a waiting pe-riod of ten days has elapsed after filing of the notification, or after the filing of any amendment to the notification.

lation A,[2] Aaron Fink along with other members of Bruce & Co. solicited purchases by speculators in the "hot issue" Honig's stock. The solicitations were accompanied, in Fink's case, by representations that both earnings and the price of Honig's stock showed reliable promise of rising, and that the financial condition of the company and its future prospects were good. The Examiner found that none of these representations was based on fact, that the predictions of increase in the price of the stock were inherently fraudulent, and that the statements regarding the Company's earnings were "materially false and misleading," in view of the information available to Fink at the time of the representations. Upon these findings, the Examiner ordered Fink suspended from association with any broker or dealer for two months.

Subsequently, as a result of petitions filed by other respondents in the proceedings against Bruce & Co., the Commission ordered review of the record with regard to all respondents and issues before the Hearing Examiner. The Commission, on the whole record, affirmed the Examiner's findings but ordered substantial increases in the penalties assessed against four of the individual respondents. Among the four was Fink, whose two-month suspension was increased to a lifetime bar from the securities industry.

Fink now seeks review of the Commission's order and reinstatement of the Hearing Examiner's suspension order, arguing that the increase in penalty ordered by the Commission was harsh, unreasonable and not in the public interest.

The Commission is empowered by Section 15(b) (7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b) (7), to "bar * * * any person from being associated with a broker or dealer, if the Commission finds that such * * barring * * * is in the public interest" and that such person has violated any of the antifraud provisions of the federal securities law. Fink does not contest the Commission's finding that he committed fraud within the meaning of the securities laws—a finding also made by the Hearing Examiner—and the only question is whether or not the Commission acted within its authority in imposing the maximum sanction of a lifetime bar.

 Fink's first contention is that the Commission should not have gone beyond the Hearing Examiner in determining the sanction required by the public interest. Section 8(a) of the Administrative Procedure Act, 5 U.S.C. § 557(b), clearly authorizes the agency to "make any findings or conclusions which in its judgment are proper on the record," notwithstanding a different determination by the Examiner. *See* N. Sims Organ & Co. v. Securities and Exchange Commission, 293 F.2d 78, 80 (2d Cir. 1961). Moreover, the precise contention advanced by Fink with regard to an increase in sanction was decided recently by this Court in favor of the Commission in Hanly, et al. v. Securities and Exchange Commission, 415 F.2d 589 (2d Cir. July 24, 1969). Hanly and three other salesmen had all made "optimistic representations" in connection with the sale of a dubious security. Each was found guilty of fraud, suspended for a period of months by the Hearing Examiner and subsequently barred on re-examination of the record by the Commission. We held that the Commission had not abused its discretion by increasing the sanction beyond that imposed by the Examiner, suggest-

---

2. On December 1, 1961, Honig's filed notification in the proper form for an offering of 100,000 shares of its common stock at $3 per share. The notification was amended three times in 1962, the last amendment being filed on March 28. On April 4 and 5, 1962, Bruce & Co. mailed to customers confirmation slips for sales already made at that time, and both dates were several days before the final waiting period had elapsed. The Examiner also found convincing evidence of active solicitation in the issue throughout the month of March, prior even to the filing of some of the amendments.

ing, however, that "in the future it would be appropriate for the Commission to make specific findings in support of its conclusion that sanctions ordered by a hearing examiner are inadequate and should be increased." 415 F.2d page 599. The Commission's findings and order against Fink were issued well before our decision in *Hanly* and, although no special findings were made with respect to Fink, the *Hanly* decision is controlling.

■ Fink calls our attention to the fact that his employment with Bruce & Co. was his first job in the securities industry and that he had only nine months' experience at the time of the Honig's-Parkway, Inc. solicitations. He suggests that his inexperience, poor training and the good faith spirit in which he made the misleading misrepresentations should mitigate his culpability. Under similar circumstances in Vanasco v. Securities and Exchange Commission, 395 F.2d 349 (2d Cir. 1968), we observed that a permanent bar from the industry seemed "severe," suggesting that "the Commission might, upon an application made to it, modify this sanction" if it were "satisfied after a period of suspension that [petitioner] could be trusted to comply with the law's requirements, * * *." *Id.* at 353. *Accord, Hanly, supra,* at 415 F.2d 598 and note 21; *see* Ross Securities, Inc., 41 S.E.C. 509 (1963). However, as in *Vanasco* and *Hanly,* both *supra,* we hold that the Commission did not abuse its broad discretion, *see* American Power & Light Co. v. Securities and Exchange Commission, 329 U.S. 90, 112–113, 67 S.Ct. 133, 91 L.Ed. 103 (1946), *and* Tager v. Securities and Exchange Commission, 344 F. 2d 5, 8–9 (2d Cir. 1965) and we, therefore, will not disturb its conclusion in the matter of sanctions assessed in protecting the public interest. However, as suggested in *Vanasco,* Fink is not foreclosed from making such application to the S. E. C. in the future as may be warranted by the then existing facts.

Affirmed.