Mark E. O'LEARY, et al., Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 22494.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 25, 1969.

Decided Jan. 30, 1970.

Mr. James E. McLaughlin, Pittsburgh, Pa., with whom Mr. William R. Caroselli, Pittsburgh, Pa., was on the brief, for petitioners.

Mr. Donald M. Feuerstein, Asst. General Counsel, Securities and Exchange Commission, with whom Messrs. Philip A. Loomis, Jr., General Counsel, and David Ferber, Solicitor, Securities and Exchange Commission, were on the brief, for respondent.

Before DANAHER, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

TAMM, Circuit Judge:

Petitioners, securities salesmen, charge that respondent abused its discretion, and acted "in total and arbitrary disregard of its own established criteria," when it "ignor[ed] the recommendation of the hearing examiner" and imposed upon them "the most drastic statutory sanctions possible." [1] They identify themselves to us as salesmen who "enjoyed a good reputation, were first offenders and whose actions were in accordance with advice of counsel and were taken in good faith and whose actions and statements caused no injury to the investing public." Accordingly, the petitioners base their claim for relief on the fact the respondent upon review ordered that they be barred from any future association with a broker or dealer in securities although the hearing examiner would have imposed varying periods of suspension.

Encapsulated, then, the sole question before us is whether under the circumstances of this case the respondent Commission abused its discretion, or exceeded its authority, in imposing upon petitioners the sanction against further participation in the securities business.

**I**

A lengthy detailing of the transactions preceding the appeal to this court is unnecessary since there is no substantial question raised as to the procedural steps resulting in the respondent's ultimate action. It will suffice to enumerate only that as a result of an action initiated by the Commission pursuant to sections 15(b) and 15A of the Securities Exchange Act, 15 U.S.C. §§ 78o(b), 78o–3 (1964) against the employing corporation, corporation president, and these petitioners, extensive proceedings were conducted by a hearing examiner to determine whether those persons had willfully violated the registration provisions of the Securities Act of 1933 § 5(a) and (c), 15 U.S.C. § 77e(a), (c) (1964), and the antifraud provisions of both securities acts, section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) (1964); §§ 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78o(c) (1) (1964) and Rules 10b—5 and 15c1-2, 17 C.F.R. §§ 240.-10b—5, 240.15c1—2, in the offer and sale of stock in two named corporations.

The hearing examiner ordered the suspension of our present petitioners from association with any broker or dealer for periods varying from four to six months. None of the respondents requested the Commission to review the examiner's Initial Decision, but the Commission's Division of Trading and Markets took exception to that part of the Examiner's conclusion that the participation of the salesmen was not willful, filed a petition for review, and urged upon the Commission the conclusion that the sanctions imposed upon the salesmen were inadequate.

The Commission made an independent review of the entire record (J.A. 86), found that our petitioner salesmen had willfully committed the violations alleged, and overruled the examiner's punitive ruling by ordering that all four be barred from any future association with a broker or dealer in securities.

**II**

Petitioners concede that the Commission possesses the statutory power to increase the sanctions imposed by the hearing examiner (Brief for the Petitioners at 5). They urge, however, that this power for "sound and persuasive" reasons should be exercised in only the most extreme circumstances, which circumstances they say are entirely absent in this case. The petitioners argue that the Commission's discretion is not without limit and must be susceptible to some type of "measurement." Citing Mr. Justice Frankfurter for the proposi-

---

1. Quotations in this paragraph are from the Statement of Issue in Petitioners' Brief.

tion that "[d]iscretion without a criterion for its exercise is authorization of arbitrariness," Brown v. Allen, 344 U.S. 443, 496, 73 S.Ct. 397, 441, 97 L.Ed. 469 (1953), they contend that the respondent here has arbitrarily and capriciously disregarded the reasonable standards applied in yet other situations.

They say the Commission here should have considered and applied principles such as have heretofore governed the Commission's remedial determinations, to wit:

1) Whether the respondents in a proceeding were first offenders. *J. H. Goddard & Co., Inc.,* Securities Exchange Act Release No. 7618 (June 4, 1965); *Strathmore Securities Inc. and Turner,* Securities Exchange Release No. 8207 (Dec. 13, 1967);

2) Whether the respondents bear a good reputation. *C.M. Loeb, Rhoades & Co.* 38 S.E.C. 843 (1959); *Merrill, Lynch, Pierce, Fenner & Beane,* 31 S.E.C. 494 (1950);

3) Whether restitution has been made. *Reynolds & Co.,* 39 S.E.C. 902 (1960);

4) Whether respondents acted upon advice of counsel. *C.M. Leob, [sic] Rhoades & Co., supra; G. J. Mitchell, Jr. Co.,* 40 S.E.C. 409 (1960);

5) [Whether any] investors appear to have been injured[.] *C.M. Leob, [sic] Rhoades & Co., supra;*

6) [Whether] failure to disclose unfavorable financial information was prompted by faith in the ultimate success of the company. *Van Alstyne, Noel & Company,* 33 S.E.C. 311, 340 (1952).

(Brief for the Petitioners at 11–12.) These citations are apparently intended to illustrate the principle that while in most cases the Commission's remedial action is very human and sometimes superhuman, it was, in the present case, inhuman.

## III

We note initially that the hearing examiner in his detailed and documented initial report (J.A. 6–74) found that these petitioners participated in "wilful violations of the anti-fraud provisions" in the sale of stock of two named corporations (J.A. 71), and that their actions were "serious, flagrant and financially remunerative" (J.A. 72). He concluded that their conduct "reveals a recklessness in each man and an indifference to the need for full and accurate disclosure and it supports and requires the imposition of sanctions in the public interest." (J.A. 72.) Our review of the record before us completely satisfies us that these findings and conclusions are amply supported by the evidence adduced before him.

The examiner also concluded, however, in yet other respects that "absent control and evidence of knowledge of violations by the salesmen * * * their participation in the mark-up violations * * * should not be deemed wilful." (J.A. 25; emphasis added). He also pointed out that the evidence did not disclose "the more flagrant types of high-pressure sales operations found in some other cases," and commented upon the fact that the petitioners were guided by Howard, the principal of the broker-dealer employer, "in whose judgment they had faith," that money was being spent for the improvement of the hotel property involved in one sales promotion, and the fact that the hotel "might be a profitable venture" (J.A. 72). Further ameliorization of petitioners' culpability was expressed by the examiner:

Although the selling transactions engaged in by each of the respondent salesmen aided and abetted registrant's violations of Section 5, nevertheless, inasmuch as the salesmen were not in positions of control within registrant's organization and were not shown to have engaged in the sale transactions with knowledge or reason to know that registration was required, I conclude that they did not wilfully violate the pertinent securi-

ties laws, and in the further light of the opinions from Schuchert to registrant and registrant's decisions and directions, in turn, to the salesmen with regard to the sales activity, that sanctions against the salesmen for such a violation would in any event be inappropriate. * * * Nor do I believe that the directorship held by O'Leary in registrant's firm compels a contrary result.

(J.A. 39–40.) It was these additional considerations, expressed with great conviction but somewhat less clarity, that resulted in the examiner's recommendation that suspension rather than permanent bar would be appropriate in the public interest. (J.A. 72–73.)

Dissatisfaction with the hearing examiner's proposed findings and conclusions relating to the petitioners' responsibility in the sale of "stock at excessive and unreasonable prices," that the petitioners "did not willfully violate section 5 of the Securities Act" and that none of petitioners "had any intention to defraud the public," motivated the Commission's Division of Trading and Markets to petition the Commission for a review of those findings and conclusions (J.A. 75–84). This petition was granted, briefs were filed, oral argument heard, and an "independent review of the record" made by the Commission (J.A. 86). Thereafter the Commission issued its findings and opinion in which it held that the conduct of petitioners *did constitute willful violations* of the antifraud and registration sections of the securities acts, and in the public interest justified their being barred from association with broker-dealer activities. The appeal to this court followed that ruling.

## IV

Customarily in cases challenging the actions of administrative agencies we consider first the extent of our authority to review such actions. We recognize that "where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence'." American Power & Light Co. v. SEC, 329 U. S. 90, 112, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946). *See also* Moog Industries, Inc. v. FTC, 355 U.S. 411, 413, 78 S.Ct. 377, 2 L.Ed.2d 370 (1958); Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217 (1941). We are bound by the Supreme Court's action in adopting

a principle now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and more flexible procedure.

Far East Conf. v. United States, 342 U. S. 570, 574–575, 72 S.Ct. 492, 96 L.Ed. 576 (1952). Moreover, we recognize that "[w]here the established facts empower an administrative agency to take particular remedial action, the determination of whether it should take that action rests within the sound discretion of the agency." San Francisco Mining Exchange v. SEC, 378 F.2d 162, 165 (9th Cir. 1967).

Congress has bestowed broad and far-reaching authority on the Commission in the enactment of sections 15(b) (5) and (7) of the Securities Exchange Act. The authorization empowers the Com-

mission to bar any person from association with a broker or dealer if, after prescribed procedures, it finds that such barring "is in the public interest" and that the charged conduct constitutes willful violation of the Act. "The Commission is given the duty to protect the public. What will protect the public must involve, of necessity, an exercise of discretionary determination. This court ordinarily should not substitute its judgment of what would be appropriate under the circumstances in place of the Commission's judgment as to measures necessary to protect the public interest." Pierce v. SEC, 239 F.2d 160, 163 (9th Cir. 1956), citing Wright v. SEC, 112 F.2d 89 (2d Cir. 1940).

Our review satisfies us that the evidence before the Commission substantially supports its findings, that the Commission was not thinking in emotional cliches, that the Commission's actions are neither arbitrary nor capricious, and that the Commission's action was completely within its statutory authority.

### V

Although petitioners do not challenge the Commission's legal authority to increase the sanctions imposed by the hearing examiner, our views on the point do not differ greatly from those expressed in several recent decisions upholding the Commission in increasing the sanctions imposed by the hearing examiner. This action has been specifically upheld in Nees v. SEC, 414 F.2d 211 (9th Cir. 1969); Hanly v. SEC, 415 F.2d 589 (2d Cir. 1969); Fink v. SEC, 417 F.2d 1058 (2d Cir. 1969); Gross v. SEC, 418 F.2d 1058 (2d Cir. 1969).

Finally, as to petitioners' protest that they "were first offenders," acting in accord with advice of counsel, and causing no injury to the investing public, we concur with Chief Judge Lumbard's statement in Tager v. SEC, 344 F.2d 5, 8 (2d Cir. 1965): "While these factors might have warranted a lighter sanction, they did not require one."

Affirmed.