**RIVER FOREST PHARMACY, INC.,**
Petitioner,

v.

**DRUG ENFORCEMENT ADMINISTRA-TION, Respondent.**

No. 73–1899.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1974.

Decided Aug. 12, 1974.

---

Gerald M. Werksman, Chicago, Ill., for petitioner.

Allyn Myle Carnman, Chief Counsel Drug Enfc. Admin., Henry E. Petersen, Asst. Atty. Gen., Allan P. Mackinnon, Atty., U. S. Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., Chicago, Ill., for respondent.

Before CUMMINGS, PELL and SPRECHER, Circuit Judges.

PER CURIAM.

This petition for review questions the propriety of an order of the federal Drug Enforcement Administration which increased the sanction recommended by an administrative law judge (law judge) from a six-month suspension of petitioner pharmacy's Certificate of Registration to a two-year suspension. The order assertedly is "arbitrary, capricious, [and] an abuse of discretion," 5 U.S.C. § 706(2)(A).[1]

---

1. "§ 706. Scope of Review.
    To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or appli-

River Forest Pharmacy, Inc., is wholly owned by Norman Tankel, a pharmacist who operates the drugstore with the assistance of his family. In January 1973, Tankel pleaded guilty to four counts of distributing controlled substances in violation of 21 U.S.C. § 841(a), a felony. The charges arose out of two sales of secobarbital and two sales of codeine cough syrup to a man who frequented the River Forest Pharmacy and ran errands for Tankel. Tankel received three years' probation.

In April 1973, on the basis of Tankel's guilty pleas, the Acting Administrator of the Bureau of Narcotics and Dangerous Drugs (the BNDD was a predecessor of the Drug Enforcement Administration) issued an order to show cause why the pharmacy's Certificate of Registration should not be revoked. Pending disposition of the matter, he ordered an immediate suspension of the Registration.[2]

At a hearing before the law judge, a compliance investigator for the BNDD testified, as did Tankel. The investigator stated that he had conducted an audit after Tankel's arrest, the audit consisting of an inventory of the controlled substances in the pharmacy and an examination of the records kept by Tankel.

"Mr. Krause [the investigator] testified that he found many discrepancies and inadequate records; that the discrepancies included both overages and shortages of various drugs which are classified as controlled substances. In addition he found other violations of the Department's regulations . . . . Mr. Krause also testified that he has been an investigator for one year and during that time had conducted about 40 audits. In his experience the discrepancies . . . [were] greater than any he had encountered . . . He testified that the respondent cooperated and assisted him during the audit." 38 Fed.Reg. 27417 (1973).

Tankel, age 46, whose father had been a pharmacist, has worked in drugstores all his life. He is present in the store every day of the week it is open except one, when another pharmacist is there. He realized that his records were inadequate but explained this as the result of the long hours he works, although he also admitted to being a poor recordkeeper. He blamed some of the discrepancies on the fact that when prescriptions were telephoned to him, he neglected to follow up and secure the physicians' written prescription forms. He attributed this omission to forgetfulness and the pressure of business. His failure to keep proper records in the past was also due to ignorance and unfamiliarity with the regulations. Tankel had not made any extra profit on the sales which had resulted in the prosecution. He submitted four letters attesting to his good character.

On the basis of the testimony of these two witnesses and documentary evidence, the law judge made findings of fact and conclusions of law. He recommended that the pharmacy's Certificate of Registration be suspended for six

cability of the terms of an agency action. The reviewing court shall—

    .    .    .    .    .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party . . . ."

2. 21 U.S.C. § 824. Subsection (a)(2) provides that:

"A registration pursuant to section 823 of this title to manufacture, distribute, or dispense a controlled substance may be suspended or revoked by the Attorney General upon a finding that the registrant—

    .    .    .    .    .    .

(2) has been convicted of a felony under this subchapter or subchapter II of this chapter or any other law of the United States, or of any State, relating to any substance defined in this subchapter as a controlled substance . . . . "

28 C.F.R. § 0.100 assigned this function to the Director of the Bureau of Narcotics and Dangerous Drugs.

months. Such a measure, he suggested, would be sufficiently severe to serve both as a deterrent to others and as an extremely costly lesson to Tankel as to the seriousness of his actions and to remind him of his bookkeeping duties. The judge also noted that the probationary period imposed by the federal court in the section 841(a) prosecution would deter Tankel from repeating his mistakes.

The Acting Administrator accepted the findings of the administrative law judge but rejected his recommended sanction.

"In short, due to [1] the seriousness of the nature of Mr. Tankel's conviction for the unlawful distribution of controlled substances, [2] the Respondent's inability to comply with certain recordkeeping, report-making, order form, and prescription requirements of the Controlled Substances Act and implementing Administrative Regulations, and [3] the obvious misconstruction of the requirements of section 304 [21 U.S.C. § 824] of the Controlled Substances Act, by the . . . Judge; and after reviewing [the record, including the findings of fact and conclusions of law proposed by counsel for the Government] . . ., the Administrator hereby adopts the recommended decision . . ., provided the suspension of the subject Certificate of Registration be for a period of two years . . . ." 38 Fed.Reg. 27420.

Counsel, in behalf of the pharmacy, asserts that there is an inadequate statement of reasons for overruling the recommendation of the law judge and that this inadequacy is tantamount to arbitrary and capricious action on the Administrator's part. In particular, petitioner complains that the increased sanc-

tion rests on a misinterpretation of the law judge's discussion.

This claim is twofold: (1) the Administrator was mistaken in saying that, in evaluating the evidence, the law judge used as his standard of review a requirement of knowledge and intent; and (2) the Administrator incorrectly concluded that the law judge used the standard announced in section 304 (21 U.S.C. § 824(d)), that of "imminent danger to the public health or safety," in deciding the ultimate issue of suspension or revocation, which standard, under section 824(d), is a guideline only for immediate pendente lite suspension.

It appears to us that a fair reading of the law judge's statements challenged by the Administrator would indicate that the law judge was merely citing absence of knowledge, intent, and imminent danger as factors supportive of a minimal suspension. At least, we will assume so arguendo. It does not follow, however, that the agency action therefore "lack-[ed] a stated rational basis" and must be overturned.

It is evident from the first two reasons given by the Acting Administrator and his citation of the Government's proposed findings of fact and conclusions of law that he viewed petitioner's violations of the drug laws as substantial and not "merely technical." The Government's proposed findings and conclusions set out the legislative history of the Controlled Substances Act. The materials reveal that Congress and the President were concerned, in part, with ensuring the establishment of safeguards by pharmacists, among others, to protect against the diversion of dangerous drugs into illicit channels. Accurate record-keeping was deemed one of the essential safeguards.[3]

3. The conclusion of the Government's submission reads as follows: "Therefore, on the basis of the entire record, the Government recommends that your Honor find that respondent, over a substantial period of time, (a) has been convicted of violating Section 401(a)(1) of the Controlled Substances Act

[Section 841(a)(1), Title 21, United States Code], by unlawfully distributing controlled substances listed in Schedules III and V, the former violation being a felony provision of said statute, and (b) has not been in compliance with specific legal requirements pertaining to the dispensing and distribution of

Although the law judge and not the Administrator was in the best position to evaluate Tankel's credibility and demeanor, those factors are irrelevant to an assessment of the seriousness of petitioner's violations and of the sanction most appropriate for the promotion of agency policy regarding them. In a case analogous to the present one, the Second Circuit upheld the decision of the Securities and Exchange Commission to increase the penalty ordered by a hearing examiner in regard to a securities salesman who had been found to have made certain misrepresentations. Fink v. SEC, 417 F.2d 1058 (2d Cir. 1969). *Cf.* Hamlin Testing Lab., Inc. v. United States Atomic Energy Comm'n, 337 F.2d 221 (6th Cir. 1964), where, on petition for an order staying an order of the AEC denying renewal of the company's Byproduct Material License, the court stated:

> "Hamlin's application for license renewal was denied on the basis of its conceded repeated violations of Commission regulations adopted to protect health and safety. A trial examiner, while finding such violations, exonerated Hamlin on his view that its violations were not wilful. . . . It has not been shown to us that lack of wilfulness would necessarily bar the Commission from refusing renewal to a licensee which had repeatedly violated its regulations." *Id.* at 222.

Thus, the Administrator's decision, fairly read, does provide reasons why the Administrator increased the sanction recommended by the law judge. True, it does not explicitly announce why the Administrator imposed a two-year suspension rather than, say, a twelve-month or an eighteen-month suspension. However, we do not construe 5 U.S.C. § 706(2)(A) as requiring so refined an explanation of his exercise of discretion.

Although we hold that the Acting Administrator was not bound by the law judge's recommendation as to the appropriate sanction, we must also consider petitioner's additional argument, its appeal to our "sense of fairness." "Fairness" supposedly dictates that we reverse the Administrator's action and reinstate the law judge's proposed sanction.

Neither section 824 nor the Administrative Procedure Act authorizes us to substitute our "sense of fairness" for the noncapricious decision of the regulatory agency. In Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 183, 188–189, 93 S.Ct. 1455, 1457, 1459, 36 L.Ed.2d 142 (1973), involving the propriety of an order of the Eighth Circuit which had set aside as "unconscionable" a 20-day suspension of registration by the Secretary of Agriculture because of the registrant's shortweighting of cattle, the Court concluded "that the setting aside of the suspension was an impermissible judicial intrusion into the administrative domain under the circumstances of this case . . . . The fashioning of an appropriate and reasonable remedy is for the Secretary, not the court." In its discussion of the applicable standard of judicial review, the Court approvingly cited American Power & Light Co. v. SEC, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946). The Court in that earlier decision had declared:

> "Our review is limited solely to testing the propriety of the remedy so chosen from the standpoint of the Constitution and the statute. We would be impinging upon the Commission's rightful discretion were we to consider the various alternatives in the hope of finding one that we consider more appropriate." 329 U.S. at 118, 67 S.Ct. at 148.

---

controlled substances and that its business operation generally, as set forth in detail above, is such that its continued access to controlled substances is not consistent with

the provisions of the Act or the deep and intense concern expressed by the Congress regarding the serious [menace] of drug abuse."

See also G. H. Miller & Co. v. United States, 260 F.2d 286, 296 (7th Cir. 1958) (en banc), cert. denied, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572.

*Ignorantia legis neminem excusat* is an often quoted and generally still honored maxim of the law. While it is possible that less deference may be accorded the maxim in the punishment process than in that of guilt determination, in the present area, where the failure, whether through carelessness, ignorance, or otherwise, to maintain a tight control of deleterious drugs including precise recordation of their movements, may well have a substantially adverse impact upon the public weal, we are not unmindful of another maxim, *Ignorare legis est lata culpa.* Thus, while we might if we were reviewing *de novo,* which we are not, determine that from the petitioner's individual point of view the suspension was harsh, we cannot say that from the point of view of overall enforcement, which is the Administrator's responsibility, there was an abuse of discretion.

Accordingly, we uphold the challenged order and reversal on review is denied.