50 F.3d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Karl KONSTANTIN, M.D., Petitioner,
v.
DRUG ENFORCEMENT ADMINISTRATION, Respondent.
 No. 93-70385.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1994.
Decided Feb. 14, 1995.
 
 Before: WALLACE, Chief Judge; PREGERSON and BEEZER, Circuit Judges.
 MEMORANDUM*
 Appellant Karl Konstantin, M.D. petitions for review of the Drug Enforcement Administrator's ("Administrator") order increasing the sanction imposed on him for prescribing controlled substances without a legitimate medical purpose. The Administrative Law Judge ("ALJ") recommended that the Administrator revoke Dr. Konstantin's Drug Enforcement Administration Certificate of Registration[1] and reject any new applications for one year. The Administrator increased this period to five years. We have jurisdiction under 21 U.S.C. Sec. 877. We deny the petition for review.
 BACKGROUND
 In 1989, the California Department of Justice initiated an investigation of Dr. Karl Konstantin after it received a complaint against him from the California Board of Medical Quality Assurance. The California Department of Justice assigned three undercover agents to investigate this complaint.
 
 
 1
 The agents made a total of six undercover visits to Dr. Konstantin's office. They used the following three undercover names: "Debbie Clifford," "Kathy Lincoln," and "Frank DeAngelo."
 
 1. Debbie Clifford's visits
 
 2
 The impetus for Clifford's appointment was her "headaches." Dr. Konstantin obtained Clifford's medical history and performed a brief physical examination. Clifford denied any medical problems, but requested some codeine. She told Dr. Konstantin that she wanted the codeine because it made her "feel good." Dr. Konstantin issued a prescription for Tylenol No. 3 and valium. Tylenol No. 3 is a form of Tylenol with codeine, and is indicated for the relief of moderate to severe pain. Valium is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety. The ALJ found that there were no indications for either of these two controlled substances. Dr. Konstantin submitted an insurance claim form listing "lung congestion" as the diagnosis.
 
 
 3
 On Clifford's second visit, she requested a refill of her valium and Tylenol No. 3 prescriptions. A discussion ensued regarding Clifford's substance abuse. Dr. Konstantin asked her about drug use, and she admitted that she "smoked weed" and "did cocaine." Dr. Konstantin told her that she should not abuse drugs, and then refilled her prescription for Tylenol No. 3 and valium.
 
 2. Kathy Lincoln's visits
 
 4
 Lincoln did not complain of any pain during her visit, and simply requested a prescription for codeine. Dr. Konstantin performed a brief physical examination, and obtained Lincoln's medical history, including her abuse of drugs. He then issued a prescription for codeine, and lectured her on the dangers of abusing drugs. Dr. Konstantin submitted a Medi-Cal claim for this visit listing as the diagnosis "upper respiratory infection" and "lung congestion." On Lincoln's second visit, she complained of an earache. However, there were no indications of pain. Dr. Konstantin refilled the prescription for codeine, and submitted a claim form listing as the diagnosis "migraine headache."
 
 3. Frank DeAngelo's visits
 
 5
 DeAngelo informed the receptionist that he needed an appointment because he had a cold virus. But during his actual visit, his "symptoms" were no longer present. Nevertheless, DeAngelo requested a prescription for codeine. He told Dr. Konstantin that he wanted the codeine because his friends were "getting busted for doing illegal drugs," and that he was afraid of "getting busted." Dr. Konstantin performed a brief physical examination, and found DeAngelo's blood pressure to be elevated. Dr. Konstantin then discussed the dangers of abusing drugs and issued a prescription for Tylenol No. 3. He also submitted a claim to Medi-Cal listing as the diagnosis "upper respiratory infection."
 
 
 6
 On DeAngelo's second visit, he again requested codeine. Dr. Konstantin checked DeAngelo's blood pressure and found it to be elevated. Dr. Konstantin then refilled the codeine prescription.
 
 
 7
 The ALJ gave credence to a DEA investigator's testimony that up to thirty percent of Dr. Konstantin's patents are controlled substance abusers and that Dr. Konstantin gave prescriptions for controlled substances to addicts to prevent them from obtaining worse drugs on the street.
 
 
 8
 The California Department of Justice charged Dr. Konstantin with ten counts of illegally prescribing controlled substances to the undercover investigators, and five counts of presenting false claims under Medi-Cal for their office visits. On January 23, 1991, Dr. Konstantin pleaded nolo contendere to three counts of prescribing controlled substances without a legitimate medical purpose. The court ordered the three counts to be reduced to misdemeanors.
 
 
 9
 The Drug Enforcement Administration began an independent investigation of Dr. Konstantin in March 1990. The investigators determined that Dr. Konstantin did not keep inventories of controlled substances, did not store controlled substances in a locked area, did not keep records of controlled substances he dispensed, and discarded controlled substances in the trash instead of following the requisite destruction procedures.
 
 
 10
 Four days after this initial investigation, the DEA conducted another investigation. Dr. Konstantin had moved the controlled substances to a cabinet with a lock, although the lock was defective. Although Dr. Konstantin made an inventory of the controlled substances in his possession, the inventory did not include the expired controlled substances that needed to be sent to the DEA for destruction.
 
 
 11
 On November 18, 1991, the DEA issued an Order to Show Cause, seeking to revoke Dr. Konstantin's Certificate of Registration to prescribe controlled substances. On October 26, 1992, after a hearing, the ALJ found that Dr. Konstantin prescribed controlled substances without a legitimate medical purpose and violated federal regulations governing the storage and record-keeping of controlled substances. However, the ALJ found that Dr. Konstantin's conduct was mitigated by a number of factors: his age, his state of health, his favorable reputation in the local medical community, and the high number of controlled substance abusers he treats. The ALJ recommended that the DEA revoke Dr. Konstantin's DEA Certificate of Registration, and reject any new applications for a period of one year.
 
 
 12
 The Administrator adopted the ALJ's findings of fact, but increased the disqualification period to five years. Dr. Konstantin now appeals.
 
 ANALYSIS
 
 13
 Pursuant to the Administrative Procedures Act, 5 U.S.C. Sec. 706(2)(A), agency decisions may be set aside only if arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See Northwest Motorcycle Ass'n v. USDA, 18 F.3d 1468, 1471 (9th Cir.1994). Review under the arbitrary and capricious standard is narrow, and we may not substitute our judgment for that of the agency. Id. The agency, however, must articulate a rational connection between the facts found and the conclusions made. Id. We must determine whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Id. We hold that the Administrator did not abuse his discretion in increasing the sanction imposed on Dr. Konstantin.
 
 
 14
 The Controlled Substances Act, 21 U.S.C. Sec. 824(a)(4) provides that the DEA may revoke a Certificate of Registration "upon the finding that the registrant ... has committed such acts as would render his registration ... inconsistent with the public interest." Inconsistency with the public interest is determined by considering the following factors:
 
 
 15
 (1) The recommendation of the appropriate State licensing board or professional disciplinary authority;
 
 
 16
 (2) The applicant's experience in dispensing controlled substances;
 
 
 17
 (3) The applicant's conviction record under Federal or State laws relating to the manufacture, distribution, or dispensing of controlled substances;
 
 
 18
 (4) Compliance with applicable State, Federal, or local laws relating to controlled substances;
 
 
 19
 (5) Such other conduct which may threaten the public health and safety.
 
 
 20
 21 U.S.C. Sec. 823(f). The Administrator may accord each factor the weight that he deems appropriate in determining the public interest. Neveille H. Williams, D.D.S., 51 Fed.Reg. 17556 (1986).
 
 
 21
 Dr. Konstantin contends that the Administrator abused his discretion in increasing the sanction imposed on him because he did not articulate a reason for the increase. We disagree.
 
 
 22
 The Administrator adopted the findings of the ALJ. The ALJ found that Dr. Konstantin's experience in dispensing controlled substances was poor, because he issued prescriptions for controlled substances without a legitimate medical purpose to three undercover agents. The ALJ also found that Dr. Konstantin falsified the medical records of the three agents. It is undisputed that Dr. Konstantin pleaded nolo contendere to three counts of dispensing controlled substances without a legitimate medical purpose.
 
 
 23
 With respect to factor (4), the ALJ found that although Dr. Konstantin cooperated with the DEA investigators, he still did not comply fully with the statutory requirements. The lock on the cabinet in which he stored the controlled substances was defective, and his inventory did not include the expired controlled substances that needed to be returned to the DEA.
 
 
 24
 Notwithstanding Dr. Konstantin's esteemed standing in the local medical community and his good intentions in preventing his patients from abusing harder drugs, the ALJ concluded that Dr. Konstantin's continued registration would be inconsistent with the public interest. The Administrator agreed with this assessment, and added that the mitigating evidence "does not serve to offset the severity of [Dr. Konstantin's] illegal behavior," and that Dr. Konstantin "disregarded the responsibility which he owes to his patients and to the public." 58 Fed.Reg. 15379 (1993). These additional conclusions suffice as a reasonable basis for increasing Dr. Konstantin's penalty.
 
 
 25
 Dr. Konstantin also contends that the Administrator abused his discretion because the increase is unduly harsh in light of the mitigating evidence. We disagree.
 
 
 26
 First, the Administrator is not bound by the recommendation of the ALJ. The Administrator reviews the record de novo and makes the final determination. 5 U.S.C. Sec. 557(b); 21 C.F.R. 316.65; Containerfreight Transp. Co. v. ICC, 651 F.2d 668, 670 (9th Cir.1981). Importantly, the Administrator need not consider every factor considered by the ALJ in arriving at a recommended sanction. Nees v. Securities and Exchange Commission, 414 F.2d 211, 216-17 (9th Cir.1969).
 
 
 27
 The issue presented before us is not whether the intentions of Dr. Konstantin were benign. There is no dispute that Dr. Konstantin prescribed the controlled substances to prevent his patients from abusing worse drugs. Rather, the inquiry is whether the Administrator abused his discretion in discounting the mitigating evidence and increasing the sanction. We must answer this question in the negative.
 
 
 28
 Dr. Konstantin argues that in River Forest Pharmacy Inc. v. Drug Enforcement Administration, 501 F.2d 1202 (7th Cir.1974), the Administrator only imposed a two-year revocation period against a pharmacist who dispensed controlled substances without a legitimate medical purpose. However, "mere unevenness in the application of the sanction does not render its application in a particular case 'unwarranted in law.' " Spencer v. Livestock Comm'n Co. v. Department of Agriculture, 841 F.2d 1451, 1456 (9th Cir.1988) (citations omitted). Moreover, compared to other sanctions, Dr. Konstantin's punishment is less severe. See Pearce v. Drug Enforcement Administration, 867 F.2d 253, 256 (6th Cir.1988) (upholding permanent revocation of petitioner's registration where petitioner had pleaded no contest to one count of unlawful distribution).
 
 
 29
 Dr. Konstantin also argues that the penalty is unduly harsh, given his good intentions and reputable standing. He cites Sokoloff v. Saxbe, 501 F.2d 571 (2d Cir.1974) for the proposition that unduly harsh sanctions are disallowed. While the court in Saxbe concluded that a permanent revocation of a physician's Certificate of Registration was unduly harsh, it nevertheless held that the sanction fell properly within the Administrator's discretion. Id. at 577.
 
 
 30
 PETITION DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 A Drug Enforcement Administration Certificate of Registration authorizes a physician to prescribe and/or distribute certain controlled substances