**ALRA LABORATORIES, INC., Petitioner,**

v.

**DRUG ENFORCEMENT ADMINISTRATION, Respondent.**

No. 94–3585.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1995.

Decided May 19, 1995.

Steven M. Kowal, Richard O. Wood (argued), Burditt & Radzius, Chicago, IL, for Alra Laboratories.

Janet Reno, U.S. Atty. Gen., Philip Eric Urofsky (argued), U.S. Dept. of Justice, Narcotic & Dangerous Drug Section, Stephen H.

Green, Drug Enforcement Admin., Washington, DC, for Stephen H. Green.

Philip Eric Urofsky, Jo Ann Harris, Theresa VanVliet, U.S. Dept. of Justice, Narcotic & Dangerous Drug Section, Washington, DC, for Drug Enforcement Admin.

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Between 1982 and 1989 Alra Laboratories held a license to manufacture and distribute "controlled substances"—principally drugs containing opiates or classed with them in the administrative pharmacopeia. Licensed firms must submit to periodic inspections to confirm their compliance with manufacturing and record-keeping rules. An inspection in 1990 revealed that Alra had neglected to apply for an extension of its license; by operating without a license, Alra violated innumerable statutes and regulations. The DEA seized Alra's inventory of 178,000 doses of clorazepate dipotassium, a Schedule IV controlled substance. Alra ceased making controlled substances (though it continued manufacturing other drugs) and applied for a new license. After an administrative process that lasted four years, the Drug Enforcement Administration said "no," 59 Fed.Reg. 50620 (Oct. 4, 1994), and Alra seeks review under 21 U.S.C. § 877.

An evidentiary hearing on Alra's application revealed that the firm had long been out of compliance with the recordkeeping and reporting requirements applicable to manufacturers of controlled substances. In 1987 the DEA had issued a letter of admonition to Alra because of these problems and its failure to maintain effective controls against the diversion of regulated substances. During the 1990 inspection that revealed the firm's unlicensed status, the inspectors also found that Alra was improperly storing controlled and uncontrolled substances together. Alra had even more serious problems with statutes and regulations under acts administered by the Food and Drug Administration, which repeatedly had cited Alra for bad manufacturing practices and recordkeeping. Alra's entire inventory of prescription drugs was seized for forfeiture in March 1991, and a district court found them to be "adulterated" because of the presence of contaminants; Alra was out of operation until November 1991 (although it was permitted to "recondition" and sell most of the seized stock). Its troubles continue. In August 1993 Alra, its president and principal investor Baldev Raj Bhutani, and its corporate secretary Neelam Bhutani, were indicted for selling adulterated drugs, making false statements to the FDA, and attempting to obstruct justice by fabricating documents to throw the FDA off the scent and presenting false testimony to the grand jury. The indictment also charges the defendants with mail fraud for presenting bogus claims to insurers. The criminal proceedings have been delayed by defendants' many motions; trial is scheduled for December 1995.

An administrative law judge recommended that the DEA issue Alra a new license. She concluded that Alra had violated statutes and regulations administered by both the DEA and the FDA, but she accepted Alra's submission that it could comply in the future. Alra has constructed a new facility and hired persons with experience in the complex regulatory regimens; the ALJ thought this to be (barely) sufficient assurance of future compliance. The Deputy Assistant Administrator of the DEA, acting as the Attorney General's delegate, saw matters differently and denied Alra's application. He accepted all of the ALJ's factual conclusions but concluded that practice is more important than promise. Alra failed to follow the law; then it ignored even the need to have a license. The same people remain in charge, and the Deputy Assistant Administrator was not inclined to accept their promises. Nothing in his decision turns on burdens of persuasion, which matter only when the evidence is in equipoise. See *Director, OWCP v. Greenwich Collieries,* —— U.S. ——, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). The DEA did not think this a case of equipoise, and we therefore disregard the parties' arguments about burdens.

Our role is to determine whether the DEA has acted in an arbitrary or capricious manner. *Noell v. Bensinger,* 586 F.2d 554, 558

(5th Cir.1978). It has not. For years Alra failed to comply with the law. Now it promises to do better. Maybe it would. But in 1991, while its application was pending before the DEA—and therefore, one might suppose, while it was on its best behavior—Alra shipped contaminated products, had its entire inventory seized, and was closed for six months. Now it is under indictment for conduct that, according to the charge, lasted through 1993. The agency did not rely on the indictment, but it had reasons in abundance. The DEA had to decide whether to believe Alra's protestation that its problems are behind it. It did not have to accept that assertion. *River Forest Pharmacy v. DEA,* 501 F.2d 1202, 1206 (7th Cir.1974). Indeed, an administrator who overlooked years of violations, followed by operation without a license, followed by seizures and indictment, and issued a new license on the basis of the applicant's promise to do better, might well be accused of letting the licensee make a monkey of the system. An agency rationally may conclude that past performance is the best predictor of future performance.

AFFIRMED.