Melvyn **HILLER**, Petitioner,

v.

**SECURITIES AND EXCHANGE COM-MISSION**, Respondent.

No. 562, Docket 33287.

United States Court of Appeals,
Second Circuit.

Argued March 17, 1970.

Decided June 4, 1970.

George S. Meissner, Brooklyn, N. Y. (Spector, Meissner, Greenspun, Berman & Fink, Brooklyn, N. Y., on the brief), for petitioner.

Paul Gonson, Asst. Gen. Counsel, Securities and Exchange Commission, Washington, D. C. (Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., and Harvey A. Rowen, Atty., S.E.C., Washington, D. C., on the brief), for respondent.

Before MOORE and FEINBERG, Circuit Judges, and BONSAL,* District Judge.

* Of the Southern District of New York, sitting by designation.

MOORE, Circuit Judge:

The orders at issue in this petition for review arose out of a private administrative proceeding instituted by the Securities and Exchange Commission (SEC) against the broker-dealer firm of Richard Bruce & Co. (Bruce & Co.) and several individuals connected with the firm. Melvyn Hiller was president of Bruce & Co. from 1957 until 1963, when the firm's registration was revoked as a result of the SEC proceedings and Bruce & Co. ceased doing business.

The Commission found that fraud had been perpetrated on customers of Bruce & Co. in the solicitation of purchase orders for shares in Transition Systems, Inc. (Transition) and that Hiller, as president and one of three principals in Bruce & Co., was responsible for the fraudulent activities. The background of this case and the nature of the fraudulent solicitations were described in the opinion comprising our decision in Gross v. Securities and Exchange Commission, 2 Cir., 418 F.2d 103 (1969), in which we sustained the Commission's disciplinary action against the vice-president of Bruce & Co. for his participation in the firm's fraudulent course of conduct with respect to Transition stock. That decision, of necessity, rested on our conclusion that the Commission's findings relating to the existence of fraud were supported by substantial evidence. Hiller has asked us to review once more the record in the Bruce & Co. proceedings. We have done so, and we affirm the Commission's findings.

Aside from the Commission's findings of fact, Hiller argues that the Commission's determination that fraud was committed in the course of Bruce & Co.'s conduct with respect to Transition stock was based on a misconception of the applicable law. In his brief, Hiller consistently states that the basic issue was whether or not Bruce & Co., its officers and its registered representatives had "reasonable grounds to believe" that statements made to customers in connection with sales of Transition shares were "untrue or misleading."[1] To confine the issue in that manner is to misconceive the legal responsibility of a broker-dealer. "A securities dealer occupies a special relationship to a buyer of securities in that by his position he implicitly represents he has an adequate basis for the opinions he renders." Hanly v. Securities and Exchange Comm'n, 415 F.2d 589, 596 (2d Cir. 1969) (footnotes omitted). The duty to avoid use of unconfirmed rumors and reports as a basis for recommending stock to purchasers is, if anything, even more clear in the circumstances presented here, because Bruce & Co. had underwritten the Transition issue and Hiller was a member of Transition's board of directors. As the Com-

---

1. Section 15(c) (1) of the Securities Exchange Act, 15 U.S.C. § 78o(c) (1), prohibits the use of "any manipulative, deceptive, or other fraudulent device or contrivance" by a broker-dealer to effect any transaction in securities covered by the Act. Rules promulgated by the Commissioner pursuant to that section clarify the prohibition by defining the terms "manipulative, deceptive, or other fraudulent device or contrivance." Hiller has limited the issue to the definition included in Rule 15c1-2(b), which includes in the statute's prohibition any untrue or misleading representation made "with knowledge of or reasonable grounds to believe that it is untrue or misleading." The Commission, however, properly relied on the definition appearing in subsection (a) of Rule 15c1-2, which prohibits "any act, practice, or course of business which op-

erates or would operate as a fraud or deceipt upon any person." The opinion of the Commission articulated its finding as follows:

The picture that emerges from this record is of registrant authorizing, if not encouraging, the solicitation of orders for a speculative stock on the basis of unconfirmed and extravagant reports or rumors, and of sales personnel being instructed to transmit such reports to persons who in the salesmen's judgment could afford to lose money or would not complain if they did, in a situation where losses were or could reasonably be anticipated.

Substantial evidence supports this finding of a fraudulent course of business conduct within the Rule 15c1-2(a) definition.

mission observed, a report disseminated by representatives of Bruce & Co. in connection with recommending Transition stock, "notwithstanding the fact that customers are advised that the report is unconfirmed, gains in authority and credibility." In Hanly, supra, the court summarized the securities dealer's responsibility when he actively solicits a purchase order as follows: "He cannot recommend a security unless there an adequate and reasonable basis for such recommendation." 415 F.2d at 597.

There was substantial evidence in the record that Bruce & Co. salesmen recommended Transition stock on the basis of extravagant reports of government contracts and active interest in Transition's prospective product shown by a variety of glamorous potential purchasers. The apparent source of these reports was the brother of one of Transition's principals. Hiller himself considered the source unreliable, and he was totally unable to confirm any of the reports, although his investigation uncovered no facts which specifically negated any of the rumors. Nevertheless, as the Commission found, Hiller continued to authorize and even encourage active solicitation of orders for Transition stock on the basis of the unconfirmed reports. The Commission found that there was no adequate and reasonable basis for such recommendations, and we agree. It is settled that "the making of representations to prospective purchasers without a reasonable basis, couched in terms of either opinion or fact and designed to induce purchases, is contrary to the basic obligation of fair dealing borne by those who engage in the sale of securities to the public." In the Matter of Mac Robbins & Co., Inc., 41 S.E.C. 116, 119 (1962), aff'd sub nom. Berko v. Securities and Exchange Comm'n, 316 F.2d 137 (2d Cir. 1963); accord, Charles P. Lawrence, Securities Exchange Act Release No. 8213 (Dec. 19, 1967), aff'd sub nom. Lawrence v. Securities and Exchange Comm'n, 398 F.2d 276 (1st Cir. 1968); A. T. Brod & Co., Securities Exchange Act Release No. 8060 (April 26, 1967).

Bruce & Co. acted in disregard of that "basic obligation" when it actively solicited purchases of Transition stock without reasonable grounds for believing that reports disseminated in connection with such solicitations had a basis in fact. As president of the firm, Melvyn Hiller was properly held responsible for the fraudulent course of conduct described in the record.

Hiller also contends, as Stanley Gross and Aaron Fink (a Bruce & Co. salesman) have already contended before this court, that the penalty imposed by the Commission was arbitrary and unreasonable in view of the nature of their violations, and that the Commission should not be allowed to impose sanctions in excess of those deemed appropriate by the Hearing Examiner. We reject these arguments for the reasons given in the two prior cases, Gross v. Securities and Exchange Comm'n, 418 F. 2d 103, 107 (2d Cir. 1969); Fink v. Securities and Exchange Comm'n, 417 F.2d 1058, 1059 (2d Cir. 1969), and in Hanly, supra, 415 F.2d at 597–598.

Additionally with regard to the sanctions imposed by the Commission, Hiller argues that the imposition of a bar in his case is inconsistent with the lesser penalties ordered by the Commission in other cases involving what Hiller considers to be more serious violations of the securities laws. Comparison of sanctions in other cases is foreclosed, however, by our decision in Dlugash v. Securities and Exchange Commission, 373 F.2d 107 (2d Cir. 1967). There petitioners complained that other parties in the same proceeding suffered disproportionately less severe penalties. We concluded that, even if the penalties were disproportionate, "it is irrelevant because the sanctions imposed upon the petitioners were well within the Commission's discretion." A fortiori, we cannot disturb the sanctions ordered in one case because they were different from those imposed in an entirely different proceeding. "[F]ailing a gross abuse of discretion, the courts should not attempt to substitute their untutored views as to

what sanctions will best accord with the regulatory powers of the Commission. * * *" Tager v. Securities and Exchange Comm'n, 344 F.2d 5, 8–9 (2d Cir. 1965).

A finding of a "gross abuse of discretion" might be supported by proof of the suggestion emphasized by counsel at oral argument that the Commission has consistently applied a different standard to the violations of "large and powerful Wall Street establishments," and thus exercised its powers discriminatorily. No evidence to that effect has been called to our attention, and the six cases cited in Hiller's brief lend no support to that conclusion.

Other arguments advanced by the petitioner do not merit discussion,[2] and we affirm the orders of the Commission barring Hiller from the securities industry and denying his petition for rehearing.

No costs.

2. Hiller urges upon us the principle of "full disclosure" as that principle is exemplified in Securities and Exchange Comm'n v. Texas Gulf Sulphur Co., 401 F.2d 833 (2 Cir., 1968), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), with the argument that he was compelled by that decision to pass along the unconfirmed reports and rumors. It requires little reflection to realize that "full disclosure" means disclosure of facts, not rumors. The principal fact needy of disclosure in connection with sales of Transition was the total absence of facts and the need for caution, yet Hiller authorized a course of active solicitation in the stock, promoted on the basis of the unconfirmed reports and rumors. As we have held, that course of conduct was in derogation of the basic obligation of a broker-dealer to deal fairly with the public.