**MARBURY MANAGEMENT, INC.,**
Harry Bader and Harvey
Jaffe, Plaintiffs,

v.

**Alfred KOHN and Wood, Walker &**
**Co., Defendants.**

No. 72 Civ. 5121.

United States District Court,
S. D. New York.

April 25, 1979.

George Berkowitz, New York City, for plaintiffs.

Lunney, Downey & Crocco, New York City, for defendant Wood, Walker & Co.; Charles A. Crocco, Jr., New York City, of counsel.

Fisher & Klein, New York City, for defendant Kohn; Jay D. Fisher, New York City, of counsel.

## OPINION

GAGLIARDI, District Judge.

Plaintiffs Marbury Management, Inc., Harry Bader and Harvey Jaffe commenced this action against the brokerage firm of Wood, Walker & Co. ("Wood Walker") and its employee, Alfred Kohn, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, and common law fraud.[1] Jurisdiction is predicated upon 15 U.S.C. §§ 78aa, 77v and principles of pendent jurisdiction. This action was tried to the court and, at the conclusion of the evidence, the court granted Wood Walker's motion to dismiss the complaint on the ground that plaintiffs failed to prove a prima facie case against it (Tr. 188–90). The court reserved decision as to defendant Kohn's motion to dismiss the complaint against him.

Plaintiffs are former customers of defendant Wood Walker, a stock brokerage firm.[2] The complaint alleges that, beginning during the summer of 1967, Alfred Kohn falsely held himself out to be a licensed registered representative employed by Wood Walker. Plaintiffs claim that they placed buy and sell orders with Wood Walker through Kohn[3] in reliance upon his training and expertise. (Complaint, at ¶¶ 10, 37, 64). The complaint further alleges that Kohn offered advice to the plaintiffs regarding the investment potential of certain securities; that he represented that his opinion was "based upon personal conversations and meetings with officers and other persons who had unique information as to the transactions of the corporation and their effect on the market price"; and that Kohn knew that his representations were false when he made them but offered them in order to induce the plaintiffs to purchase certain stocks. (*Id.* ¶¶ 18–20, 42–45, 70–73). Wood Walker, it is alleged, permitted Kohn to hold himself out as a registered representative when it either knew or should have known that he was not so licensed. (*Id.* at ¶¶ 12–13, 39–40, 66–67). Based upon the aforesaid actions of the defendants, the complaint alleges three causes of action on behalf of each of the plaintiffs: violations of Section 10(b) of the Exchange Act (and Rule 10(b)(5) thereunder), Section 17(a) of the Securities Act of 1933, and fraud under the law of New York. The following constitutes this court's findings of fact and conclusions of law in accordance with Rule 52(a), Fed.R.Civ.P. Plaintiffs Marbury Management and Bader have proved their claims under § 10(b) and therefore are entitled to recover damages from Kohn. Plaintiff, Jaffe, however, has not proved all of the requisite elements of a § 10(b) cause of action and therefore is not entitled to relief. Plaintiff's motion for reconsideration of the court's dismissal of the complaint against Wood Walker pursuant to Rule 60(b), Fed. R.Civ.P. is also denied.

### Discussion

1. *10(b) Claims Against Defendant Kohn*

 █ It is well established that an implied cause of action under § 10(b) will lie only if

---

1. This court dismissed the complaint against a third defendant, the New York Stock Exchange, Inc. in a memorandum decision dated January 24, 1974.

2. Plaintiff Marbury Management is engaged in business as a finance company.

3. A list of the securities that each of the plaintiffs purchased with Wood Walker through its employee, Alfred Kohn, is set forth in Schedules A, B, and C which are attached to the complaint. *See* n.14 for lists of the securities purchased by Marbury Management and Bader.

the plaintiffs can prove that the defendant willfully misstated or omitted a material fact which caused the plaintiff injury in connection with his purchase or sale of a security. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (knowing or intentional conduct required); *TSC Industries Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) (misstatement or omission must be material); *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Titan Group Inc. v. Faggen,* 513 F.2d 234, 237 (2d Cir. 1975) (causation still a necessary element in some private 10(b) actions); *Blue Chip Stamp v. Manor Drug Stores,* 421 U.S. 723, 730–31, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (plaintiff must be a purchaser or seller of securities).

▮▮▮ The complaint in this case alleges that Kohn made two types of misstatements giving rise to a private cause of action under § 10(b): (1) numerous predictions concerning the future earning capacities and proposed acquisitions of various companies, and (2) representations that he was a "portfolio management specialist." As to the first set of alleged misstatements, plaintiffs claim that Kohn stated that "he had a relative on the board of directors . . . of [DWG] corporation" and that the stock "should go up in price" (Gold Tr. 30) (Jaffe Tr. 90); that investors in Commuter Airlines Co. were likely to earn a "big return" (Bader Tr. 61) (Jaffe Tr. 100); that Capital Holding and Stanrock Uranium

were "good stocks" which should return a profit (Bader Tr. 63–64); and that a favorable newspaper article regarding the Responsive Environment Co. would soon be published (Gold Tr. 33) (Bader Tr. 62). Although the plaintiffs claim that Kohn knew that these representations were false when he made them (Complaint ¶¶ 20, 47, 74), nothing in the record supports this conclusion. On the contrary, Robert Gold, President of plaintiff Marbury Management, testified that he did not believe that Kohn was making fraudulent statements (Tr. 31, 41), and plaintiff Jaffe conceded that certain information and investment advice that Kohn gave to him may have been true (Tr. 116). Nor does the mere fact that the defendant's predictions did not materialize indicate that the statements were untrue at the time of issuance. *See A. Jacobs,* What is Misleading Statement or Omission under Rule 10b–5, 42 *Fordham L.Rev.* 243, 284 (1973) *citing inter alia Dolgow v. Anderson,* 53 F.R.D. 664, 670, 676–79 (E.D.N.Y.1971) (intervening cause); *Milberg v. Western Pac. R.R.,* 51 F.R.D. 280, 282 (S.D.N.Y.1970) (cannot reasonably expect projections to be infallible in all situations). A false prediction, however, may be actionable if the plaintiff establishes that the statements, whether characterized as either fact or opinion,[4] were not prepared in a reasonable manner or with a firm basis. *SEC v. Okin,* 137 F.2d 862, 864 (2d Cir. 1943); *REA Express v. Interway Corp.,* 410 F.Supp. 192, 197 (S.D.N.Y.1976) *citing Marx v. Computer Sciences Corp.,* 507 F.2d 485, 490 (9th Cir. 1974); *Schuller v. Slick Corp.,* [1974–1975

---

4. The fact-opinion dichotomy has become largely a distinction without a difference. Recommendations to buy or sell securities, opinions or estimates as to the present or the future status of an event, projections and predictions of future occurrences, and representations that an incident will take place all have been considered to be "facts" within the ambit of § 10(b). *See A. Jacobs, supra* at 279 *citing inter alia Chris Craft Indus., Inc. v. Bangor Punta Corp.,* 426 F.2d 569, 579 (2d Cir. 1970) (Lumbard, J. concurring) (the Rule covers "information" that does not fit easily into categories of either "fact" or "opinion"); *Myzel v. Fields,* 386 F.2d 718, 734 n. 8 (9th Cir. 1967); *SEC v. American Plan Inv. Corp.,* [1972–1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 93,769,

at 93,361 (C.D.Cal.1972) (consent order enjoining misleading projections); *Dolgow v. Anderson,* 53 F.R.D. 664, 670–79 (E.D.N.Y.1971); *Sprayregen v. Livingston Oil Co.,* 295 F.Supp. 1376, 1377–78 (S.D.N.Y.1968) (false statements on projected profits); *Fischer v. Kletz,* 249 F.Supp. 539, 541 (S.D.N.Y.1966) (inflated earnings forecast disseminated both to public and to regulatory agency); *Nicewarner v. Bleavins,* 244 F.Supp. 261, 264 (D.Colo.1965) (statements about expected profits, likelihood of success of venture, etc., not shown to be in bad faith by the evidence); *SEC v. Broadwall Sec., Inc.,* 240 F.Supp. 962, 968 (S.D.N.Y.1965) (broker-dealer's predictions and opinions as to future market prices of stock).

Binder] Fed.Sec.Law Rep. (CCH) ¶ 95,065 at p. 97,739; *In re Alexander Reid & Co., Inc.,* [1962–63 Binder] Fed.Sec.Law Rep. (CCH) ¶ 76,823 at p. 81,073; *In re Mac Robbins & Co.,* 40 S.E.C. 497, 502 (1961) *remanded sub nom. Kahn v. SEC,* 297 F.2d 112 (2d Cir. 1961) and *Berko v. SEC,* 316 F.2d 137 (2d Cir. 1963); *Jacobs, supra,* at 285; A. Bromberg, 2 *Securities Law* § 7.2(1) (1977); E. Weiss, *Registration & Regulation of Brokers and Dealers,* at 185 (1965).[5] Plaintiffs have not offered even a scintilla of evidence to show that Kohn's representations were groundless and absent such proof, the requisite falsity is lacking to establish a misstatement within the purview of § 10(b).

Kohn's representations concerning his expertise in the securities field present a different problem. Unlike his investment advice, Kohn's repeated statements that he was a stockbroker (Gold Tr. 13) (Bader Tr. 60) (Jaffe Tr. 87–89) and his use of a business card stating that he was a "portfolio management specialist" (Exhibits 47, 48) were undeniably false. William Haneman, general partner of Wood Walker, testified that Kohn was employed by Wood Walker as a trainee, and as such, was permitted to accept buy or sell orders only under the supervision of a Wood Walker officer (Haneman Tr. 141).

Scienter and materiality, two principal elements of the private cause of action under 10(b), are also present with regard to Kohn's statements concerning his qualifications. Given defendant's deposition testimony that he was neither a "securities analyst" nor "portfolio management specialist"

but knew that his business card listed him as such (Tr. 138–39), it is clear that Kohn acted with an " 'intent to deceive, manipulate, or defraud' ". *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). A willfully false statement is considered to be material if:

> [there is] a substantial likelihood that, under all the circumstances, the omitted [or misrepresented] fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosures of the omitted [or misrepresented] fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*TSC Industries v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).[6] Analyzed against this standard, the court finds that Kohn's misstatements were material. The court reaches this conclusion for two reasons. First, the expertise that Kohn held himself out as having affected the type of services that he could lawfully perform for investors. For example, testimony at trial indicated that while trainees at a brokerage firm can accept buy or sell orders by phone under the supervision of a broker, they cannot recommend the purchase of a security outside of the office. (Haneman Tr. 148–49). Second, the qualifications and expertise of a securities salesman are particularly significant criteria in evaluating any information as inherently speculative as future earnings predictions. Thus, a reasonable investor would

---

5. *Hanly v. SEC,* 415 F.2d 589 (2d Cir. 1969) and *Hiller v. SEC,* 429 F.2d 856 (2d Cir. 1970) are not contrary to this position. *Hanly* only held that a broker violates Rule 10b–5 when he makes a recommendation to a customer without an "adequate and reasonable basis for such recommendation." *Hanly v. SEC, supra,* at 597. After quoting its holding in *Hanly,* the Second Circuit noted specifically in *Hiller* that "there was substantial evidence in the record that . . . [the] salesman recommended Transition Stock on the basis of extravagant reports . . ." *Hiller v. SEC, supra,* at 858.

6. Although this standard arose in the context of defining materiality for the purposes of Section 14(a) of the Exchange Act, "it is generally agreed that the same standard applies under § 10(b). *Joyce v. Joyce Beverages, Inc.,* 571 F.2d 703, 707 n. 6 (2d Cir. 1978) *citing Goldberg v. Meridor,* 567 F.2d 209, 218–19 (2d Cir. 1977); *see also SEC v. Bausch & Lomb Inc.,* 565 F.2d 8, 14–15 (2d Cir. 1977).

certainly consider the total mix of information "significantly altered" if he learned that certain investment advice was being furnished to him by "a trainee" in the securities field rather than a "specialist". It is therefore irrelevant that the plaintiffs may not have known the precise training required for an individual to be licensed as a broker (Tr. 52, 84, 108); what is important is that the terms "broker" and "specialist" themselves connote a level of competence to the reasonable investor. Defendant's reliance on *Hayden v. Walston & Co., Inc.*, 528 F.2d 901 (9th Cir. 1975) is inappropriate. Although the Ninth Circuit held that a salesman's failure to reveal to his investors that he was not licensed to sell securities was not an omission of a material fact under Rule 10b–5, that decision predated the Supreme Court's ruling in *Northway* and relies heavily on the fact that the complaint contained no allegations that the salesman's omission rendered his other statements misleading. The complaint in this case, in contrast, alleges that the misstatements were materially misleading (Complaint ¶¶ 21, 48, 75). These allegations are amply supported by the trial testimony to warrant a different result from that reached by the Ninth Circuit in *Hayden*.

▮ The final element of a 10(b) cause of action based on affirmative misrepresentations is proof of reliance.[7] In such a case, "reliance" would seem to embody,

> two separate questions both of which are designed to determine whether the utterance by defendant caused the plaintiff to enter into the transaction and therefore his losses which allegedly flowed from the transaction. The two questions are did the plaintiff believe what the defendant said and was his belief the cause (or a

cause) of plaintiff's action in entering into the transaction.

> R. Jennings & H. Marsh, *Securities Regulation* 1063 (1977). Unlike the concept of materiality, which is couched in terms of "the reasonable investor", the concept of reliance requires a subjective inquiry to determine causation in fact. 3 A. Bromberg, *supra* § 8.6 at p. 209–11. *See also Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 380–81 (2d Cir. 1974); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 238–39 (2d Cir. 1974).

▮ Based upon plaintiffs' testimony at trial, this court finds that Kohn's misrepresentations regarding his employment status caused plaintiffs Marbury Management and Bader to purchase securities from Kohn between the summer of 1967 and April 1969. Both of these plaintiffs testified repeatedly and without qualification that they would not have purchased the stocks had they known that Kohn was not a broker (Gold Tr. 24, 47–48, 51–53)[8] (Bader Tr. 66, 82). Plaintiff Jaffe, however, has not established to the court's satisfaction that he purchased the securities in question based upon Kohn's misstatement of his employment status. On the contrary, Jaffe's testimony indicates that he purchased in reliance upon his friendship with Kohn and Kohn's representations that Kohn had inside information regarding the companies whose stock was being recommended. (Jaffe Tr. 89, 90, 113–16). Thus, this court finds that only plaintiffs Marbury Management and Harry Bader have proven a cause of action under Section 10(b) of the Securities Exchange Act.[9]

---

**7.** The Supreme Court's decision in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) did not eliminate proof of reliance as an element in a private cause of action under Rule 10b–5. Rather, the Court held that proof of reliance would not be a prerequisite to recovery in situations involving a failure to disclose a material fact. *Id.* at 153–54, 92 S.Ct. 1456.

**8.** Robert Gold, President of Marbury Management, testified on behalf of the plaintiff corporation.

**9.** The court dismisses those portions of the complaint that seek to recover for violations of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). The Court of Appeals for this circuit stated several years ago that the question

## 2. Reconsideration of Dismissal of Wood Walker

Finding that there was "no evidence whatsoever . . . of any participation on behalf of defendant Wood Walker to manipulate with fraud or to in any way indicate that they intended to deceive their customers," the court dismissed at trial the complaint against Wood Walker (Tr. 188–90). Plaintiffs have requested that the court reconsider the dismissal pursuant to Rule 60(b).[10] For the reasons stated below, plaintiffs' motion is denied.

The complaint alleges that Wood Walker (1) "knew or should have known that defendant Kohn was not a legally licensed allowed him to hold himself out as one authorized to transact buy and sell orders representative, but nevertheless . . . . . . ." (Complaint ¶¶ 12–13, 39–40, 66–67), and (2) knew that Kohn's statements concerning the investment potential of various securities were false when they were made (*Id.* ¶¶ 17, 46, 71). Although the complaint does not articulate with any more precision the theory upon which the plaintiffs seek to impose liability upon Wood Walker, plaintiffs' position as expressed at trial and in their post-trial memorandum of law indicates that they seek recovery against Wood Walker as an aider and abettor of Kohn's securities law violations.[11]

In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court explicitly refused to decide whether § 10(b) and Rule 10b–5 may give rise to aiding and abetting liability. *Id.,* 425 U.S. at 192 n. 7, 96 S.Ct. 1375. Since *Hochfelder,* however, the Second Circuit has held that these provisions permit the imposition of aiding and abetting liability. *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 44 (2d Cir. 1978); *Hirsch v. DuPont,* 553 F.2d 750, 759 (2d Cir. 1977). In order to impose aiding and abetting liability, the plaintiff must prove (1) that the primary party, here Kohn, committed a securities law violation; (2) that the aider and abettor knew of the violation; (3) and that the aider and abettor substantially assisted in effecting the violation. *Rolf v. Blyth, Eastman Dillon & Co., supra,* 570 F.2d at 47–48; *SEC v. Coffey,* 493 F.2d 1304, 1316 (6th Cir. 1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975); *cf. Rochez Bros., Inc. v. Rhoades,* 527 F.2d 880, 886 (3d Cir. 1975); *Landy v. Federal Deposit Ins. Co.,* 486 F.2d 139, 162–63 (3d Cir. 1973) *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974) (proof of "wrongful act" by primary wrongdoer suffices for first element). Judged against this standard, Wood Walker cannot be held liable under an aiding and abetting theory. Although Kohn's underlying violation satisfies the first element of the test, neither of the other requirements have been satisfied. All of the actions and inactions of Wood Walker, even when viewed most favorably to the plaintiffs, support a finding of only negligence.

10. Although a final judgment dismissing the complaint against Wood Walker was never signed due to settlement negotiations with the remaining defendant, Rule 60(b) provides for relief from either a "final judgment, order or proceeding." Rule 60(b), Fed.R.Civ.P.

11. Plaintiffs have not alleged that Wood Walker is liable to them either as a principal under the theory of respondeat superior or as a controlling person under Section 20(a) of the Exchange Act. Absent such allegations, the court need not consider Wood Walker's liability based upon either of these theories.

whether § 17(a), a criminal provision, may be the source of an implied private right of action was an open question. *Globus v. Law Research Service, Inc.,* 418 F.2d 1276, 1283 (2d Cir. 1969). Since that time, however, this district has repeatedly held that no such cause of action exists, *see, e. g., Scarfarotti v. Bache & Co.,* 438 F.Supp. 199, 207 (S.D.N.Y.1977); *Architectural League of New York v. Bartos,* 404 F.Supp. 304 (S.D.N.Y.1975), and this court adopts the reasoning set forth in those cases.

Since reliance is also an essential element of a common law fraud claim, see W. Prosser, *Torts* § 108 (4th ed. 1971), plaintiff Jaffe also fails to state a cause of action against defendant Kohn under this theory.

(Tr. 153–54). Thus, plaintiffs have failed to establish the element of recklessness enunciated in *Rolf*.[12] The court also found that Wood Walker neither supplied nor paid for Kohn's business cards (Tr. 182–83). Wood Walker thus did not in any way provide substantial assistance to Kohn in violating the securities law. The court's conclusions with respect to plaintiffs' attempts to satisfy the second and third elements of aiding and abetting liability are supported by *Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir. 1975). In *Woodward*, the Fifth Circuit stated that the degree of knowledge required to impose aiding and abetting liability should depend on the uniqueness of the assisting activity in the particular enterprise. *Id.* at 97. Thus, in a case combining inaction and affirmative assistance, the Fifth Circuit "was loathed" to find 10b–5 liability without clear proof of intent to violate the securities law if the evidence shows no more than the performance of routine transactions. Accordingly, plaintiff's motion pursuant to Rule 60(b), Fed.R.Civ.P. is denied.

### Damages

 Section 28(a) of the Exchange Act, 15 U.S.C. § 78bb(a) limits recovery in securities law actions to "actual damages". The appropriate measure of damages in this Circuit for the type of violations proven in this case is the amount of each defrauded buyer's net economic loss. This figure is calculated by determining each plaintiff's gross economic loss—the difference between the purchase and resale prices of the securities—and subtracting "an appropriate offset dictated by the particular facts of the case." *See Clark v. John Lamula Investors, Inc.*, 583 F.2d 594, 604 (2d Cir. 1978). Although Robert Gold, president of Marbury Management, testified at two post-trial hearings that plaintiffs Marbury Management and Harry Bader learned on approximately January 28, 1970 that Kohn was not a portfolio management specialist, Marbury Management did not sell its D.W.G., Responsive Environment, and Universal Container securities until over a year after that date, and Bader continues to hold all of the securities that Kohn purchased for his account. Accordingly, applying the general principles of the *Clark* decision to the facts of this case, the court determines that the plaintiffs' gross economic losses must be reduced by the amount that the plaintiffs lost due to their failure to sell their securities within a reasonable period after discovering defendant's fraud.[13] Based upon the stipulation entered into by the parties regarding the market value of the securities on January 28, 1970 and the schedules of purchases attached to the complaint, Marbury Management's net economic loss is $28,727.27 and Bader's net economic loss is

**12.** "Reckless conduct is, at the least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Rolf v. Blyth, Eastman Dillon & Co.*, *supra*, 570 F.2d at 47 *citing Sanders v. John Nuveen & Co.*, 554 F.2d 790, 793 (7th Cir. 1977).

**13.** The Second Circuit seems to regard plaintiff's failure to mitigate damages as a possible ground for reducing the amount of the damage award in an appropriate case. *See Clark v. John Lamula Investors, Inc.*, *supra*, at 604 n. 9. Such an approach has received support from courts and commentators alike because it attempts to calculate the amount of damages based upon losses that are truly attributable to the fraud. *See Harris v. American Investment Co.*, 523 F.2d 220 (8th Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 784, 48 L.Ed.2d 643 (1976); *Foster v. Financial Technology, Inc.*, 517 F.2d 1068 (9th Cir. 1975); *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Competitive Ass'n, Inc. v. International Health Services*, [1974–1975 Binder] Fed.Sec.Law Rep. (CCH) ¶ 94,966; *Fox v. Glickman Corp.*, 253 F.Supp. 1005 (S.D.N.Y.1975); Reder, Measuring Buyer's Damages in 10b–5 Cases, 31 Bus. Lawyer 1839 (1976). Thus, if the plaintiff continues to hold the stock after the discovery of the fraud, he can be deemed to have made a "second investment decision", *see Harris v. American Investment Co.*, *supra*, 523 F.2d at 228, based on the "total mix" of information now available.

$20,502.25.[14] Let the Clerk enter judgment for plaintiff Marbury Management in the amount of $28,727.27 and judgment for plaintiff Bader in the amount of $20,502.25, both plus interest from January 28, 1970.

So Ordered.

**14.** These figures were determined as follows:

Marbury Management

| Name of stock | # of shares | Date Purchased | Purchase Price | Market Stipulated Value Per Share as of 1/28/70 | Market Value of All Shares Owned as of 1/28/70 | Loss |
|---|---|---|---|---|---|---|
| D.W.G. Corp. | 1000 | 8/27/68 | 14,967.50 | bid $4 7/8 | 4,875.00 | $10,092.50 |
| Responsive Environment | 100 | 12/ 6/68 | 3,385.75 | bid $8 | 800.00 | 2,585.75 |
| Universal Container | 500 | 3/26/69 | 12,406.25 | bid $9 | 4,500.00 | 7,906.25 |
| Unexcelled | 500 | 1/20/69 | 22,205.00 | [sold on 3/26/69 for $13,312.23] | | 8,892.77 |
| | | | | | | $29,477.27 |
| | | | | | | − 750.00 * |
| | | | | Total Loss | | $28,727.27 |

\* Stipulated amount that defendant Kohn previously paid to defendant Marbury Management regarding its loss on D.W.G. stock

Harry Bader

| Name of stock | # of shares | Date Purchased | Purchase Price | Market Value | | Loss |
|---|---|---|---|---|---|---|
| Responsive Environment | 500 | 12/13/68 | 16,928.75 | bid $8 | $4,000.00 | $12,928.75 |
| Capital Holding | 100 | 12/27/68 | 687.50 | [no market value] | | 687.50 |
| Commuter Airlines | 500 | 9/27/68 | 6,312.50 | [no market value] | | 6,312.50 |
| Stanrock Uranium | 200 | 1/ 6/69 | 973.50 | bid $2 | 400.00 | 573.50 |
| | | | | Total Loss | | $20,502.25 |