IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 15, 2005 Session

## RODERICK McDAVIS v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

### Appeal from the Chancery Court for Davidson County
### No. 02-3294-I    Claudia Bonnyman, Chancellor

### No. M2004-00055-COA-R3-CV - Filed September 7, 2005

A Metropolitan Nashville police officer seeks judicial review of the Final Order of the Civil Service Commission of Metropolitan Government pursuant to Tennessee Code Annotated section 4-5-322 following his termination from Metropolitan Government service. After reviewing the record, the Chancery Court of Davidson County determined that the decision of the Civil Service Commission was not arbitrary and capricious and was supported by substantial and material evidence. The judgment of the Chancellor is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

WILLIAM B. CAIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J. and DONALD P. HARRIS, SR. J., joined.

Jeffrey Blackshear, Nashville, Tennessee, for the appellant, Roderick McDavis.

J. Douglas Sloan, III, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

### MEMORANDUM OPINION[1]

Roderick McDavis ("Officer McDavis") was a Metropolitan Nashville police officer on April 26, 2001. He, along with two other officers, Steve Bumpus and John Bourque, responded to a report

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

of criminal activity to find one Antwain Hockett ("Mr. Hockett") present. A confrontation occurred between Officer McDavis and Mr. Hockett during which Officer McDavis drew his service weapon from his holster, grabbed Mr. Hockett by the throat and pushed him to the ground pointing the weapon at his face and making a comment, the exact nature of which was disputed before the Commission. After other police officers intervened and freed Mr. Hockett, Officer McDavis reholstered his weapon and returned to his patrol car. Shortly thereafter McDavis placed Mr. Hockett under arrest for several offenses including assault. The commissioner refused to issue an assault warrant against Mr. Hockett, and Officers Bumpus and Bourque reported the entire incident to their supervisor. On May 2, 2001, Mr. Hockett also filed a complaint, and these complaints resulted in a disciplinary board hearing on June 14, 2001. Officer McDavis was found guilty of the charges, and his employment was terminated. He appealed to the Civil Service Commission of Metropolitan Nashville and Davidson County. On February 8, 2002, a hearing was held before Administrative Law Judge Randall LeFevor after which Judge LeFevor found Officer McDavis to have violated specified general orders of the Metropolitan Police Department and Tennessee Criminal Statutes and upheld the termination of Officer McDavis. After Judge LeFevor denied his Petition for Reconsideration, McDavis appealed to the Civil Service Commission, which reviewed the matter on September 10, 2002. On October 17, 2002, the chairman of the Civil Service Commission issued a Final Order upholding Judge LeFevor's decision to terminate Officer McDavis. The matter was timely appealed to the chancery court in Nashville and, upon review of the administrative record, Chancellor Claudia Bonneyman held that Officer McDavis had not been treated arbitrarily and capriciously and that the action of the Civil Service Commission was supported by substantial and material evidence. Officer McDavis filed a timely appeal to this Court.

Appellant does not question the factual findings upon which his termination was based, but limits his appeal before this Court to the severity of the sanction imposed upon him. The single issue asserted is:

> Whether the Chancellor erred by failing to find that the Civil Service Commission's Administrative Decision to approve the termination of Roderick McDavis was arbitrary and capricious and an unwarranted exercise of discretion because of the disparity of punishment between Officer McDavis and other equally situated Police Officers.

The limited scope of review available before the judiciary in review of the decision of an administrative tribunal is statutorily mandated and well settled:

> Tenn.Code Ann. § 4-5-322(h) states that upon judicial review of an agency's findings
>> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>> (1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

"Substantial and material evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.' " *Clay County Manor, Inc. v. State of Tennessee*, 849 S.W.2d 755, 759 (Tenn.1993) (*quoting Southern Railway Co. v. State Board of Equalization*, 682 S.W.2d 196, 199 (Tenn.1984)).

This Court's review of the trial court's decision is essentially a determination of whether or not the trial court properly applied the foregoing standard of review. *James R. Bryant v. Tennessee State Board of Accountancy*, No. 01A01-9303-CH-00088, 1993 WL 330987, Davidson County (Tenn.Ct.App. Filed September 1, 1993 at Nashville) (*citing Metropolitan Gov't. Of Nashville v. Shacklett*, 554 S.W.2d 601, 604 (Tenn.1977)).

*Papachristou v. University of Tennessee*, 29 S.W.3d 487, 490 (Tenn.Ct.App.2000).

Since the sole issue before this Court is the severity of the sanctions imposed upon Officer McDavis in a case in which the controlling facts are not disputed, the standard of appellate review is even more restricted.

The leading case relative to the standard of judicial review of sanctions imposed by an administrative agency is *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 36 L.Ed.2d 142, 93 S.Ct. 1455 (1973). The Court declares:

The applicable standard of judicial review in such cases required review of the Secretary's order according to the "fundamental principle . . . that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.' " *American Power Co. v. SEC*, 329 U.S. 90, 112 (1946). Thus, the Secretary's choice of sanction was not to be overturned unless the Court of

Appeals might find it 'unwarranted in law or . . . without justification in fact . . . .'" *Id.*, at 112-113; *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941); *Moog Industries, Inc. v. FTC*, 355 U.S. 411, 413-414 (1958); *FTC v. Universal-Rundle Corp.*, 387 U.S. 244, 250 (1967); 4 K. Davis, Administrative Law § 30.10, pp 250-251 (1958). The Court of Appeals acknowledged this definition of the permissible scope of judicial review but apparently regarded respondent's suspension as "unwarranted in law" or "without justification in fact." We cannot agree that the Secretary's action can be faulted in either respect on this record.

We read the Court of Appeals' opinion to suggest that the sanction was "unwarranted in law" because "uniformity of sanctions for similar violations" is somehow mandated by the Act. We search in vain for that requirement in the statute. The Secretary may suspend "for a reasonable specified period" any registrant who has violated any provision of the Act. 7 U.S.C. § 204. Nothing whatever in that provision confines its application to cases of "intentional and flagrant conduct" or denies its application in cases of negligent or careless violations. Rather, the breadth of the grant of authority to impose the sanction strongly implies a congressional purpose to permit the Secretary to impose it to deter repeated violations of the Act, whether intentional or negligent. *Hyatt v. United States*, 276 F.2d 308, 313 (CA10, 1960); *G.H. Miller & Co. v. United States*, 260 F.2d 286 (CA7, 1958); *In re Silver*, 21 Agric. Dec. 1438, 1452 (1962). The employment of a sanction within the authority of an administrative agency is thus not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases. *FCC v. WOKO*, 329 U.S. 223, 227-228 (1946); *FTC v. Universal-Rundle Corp.*, 387 U.S., at 250, 251; *G.H. Miller & Co. v. United States, supra*, at 296; *Hiller v. SEC*, 429 F.2d 856, 858-859 (CA2, 1970); *Dlugash v. SEC*, 373 F.2d 107, 110 (CA2, 1967); *Kent v. Hardin*, 425 F.2d 1346, 1349 (CA5, 1970).

Moreover, the Court of Appeals may have been in error in acting on the premise that the Secretary's practice was to impose suspensions only in cases of "intentional and flagrant conduct." The Secretary's practice, rather, apparently is to employ that sanction as in his judgment best serves to deter violations and achieve the objectives of that statute. Congress plainly intended in its broad grant to give the Secretary that breadth of discretion. Therefore, mere unevenness in the application of the sanction does not render its application in a particular case "unwarranted in law."

*Butz*, 411 U.S. at 185-88. (footnotes omitted)

*Mosley v. Tennessee Dept. of Comm. and Ins.*, No. M2003-01998-COA-R3-CV, 2004 WL 2663667 (Tenn.Ct.App. Nov. 22, 2004) (perm. app. denied May 9, 2005).

Following the lead of *Butz*, both the Supreme Court of Tennessee and the Sixth Circuit Court of Appeals have asserted the same rule.

> As noted by the learned Chancellor: "[t]he appropriate remedy is peculiarly within the discretion of the [agency] . . ." Having found grounds to affirm the procedures employed, facts found, and conclusions reached, we will not interfere with the sanctions imposed upon Dr. McClellan. We remand for the appropriate imposition of those sanctions and tax the costs of this appeal to Dr. McClellan.

*McClellan v. Bd. of Regents*, 921 S.W.2d 684, 693 (Tenn. 1996).

In reversing the United States District Court for the Middle District of Tennessee, the United States Court of Appeals for the Sixth Circuit held:

> Determination of a sanction to be applied by an administrative agency, if within bounds of its lawful authority, is subject to very limited judicial review. *Kulkin v. Bergland*, 626 F.2d 181, 184 (1st Cir. 1980). " 'The relations of remedy to policy is peculiarly a matter of administrative competence.' " *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (quoting *American Power Co. v. S.E.C.*, 329 U.S. 90, 112, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946)). The reviewing court's function is only to "determine the validity of the questioned administrative action," not to review the sanctions. *Martin v. United States*, 459 F.2d at 302; *G.H. Miller & Co. v. United States*, 260 F.2d 286, 296 (7th Cir. 1958) (*en banc*) *cert. denied*, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959).

> While the de novo provision of the Food Stamp Act raises certain problems, it does not, in our view, call for a departure from the usual standard of review concerning sanctions.

> *Kulkin v. Bergland* at 184; *see also Broad Street Food Market, Inc. v. United States*, 720 F.2d 217 at 220 (1st Cir. 1983). Once the trial court confirmed that there were repeated violations of the law and regulations as determined by appellant, "the court's only reasoning task is to examine the sanction imposed in light of the administrative record to judge whether the agency properly applied the regulations, *i.e.*, whether the sanction is 'unwarranted in law . . . or without justification in fact. . . .' " *See Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185-189, 93 S.Ct. 1455, 1457-1459, 36 L.Ed.2d 142 (1973), cited in *Broad Street Food Market,*

*supra*, at 220.  We agree with the First Circuit's rationale in this respect.  *Cf. Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975) (*en banc*).  *See also* the incisive dissent by Russel, J., in the latter case at 1222; *Wolf v. United States*, 662 F.2d 676, 678 (10th Cir. 1981).

*Woodard v. U.S.*, 725 F.2d 1072, 1077-78 (6th Cir. 1984).

For any of the infractions charged in the complaints before the Civil Service Commission, the available punitive measures included termination.  The trial court adopted in summary the findings of the administrative law judge, and these findings are not disputed by Appellant.  The final order of the court states:

> Mr. Roderick B. McDavis (Officer McDavis) was employed by the Metropolitan Nashville Police Department for approximately six years.  On April 26, 2001, Officer McDavis and several other officers responded to a report of criminal activity and followed up by performing field interviews and warrant checks of several individuals.  One of the individuals interviewed was Antwain Hockett (Mr. Hockett), who was well known to the police due to his lengthy criminal record.  Officer McDavis was eager to assist in the investigation of a recent drive-by shooting in the area, and he believed that Mr. Hockett might have had information about the crime.  Officer McDavis questioned Mr. Hockett and in reply to one of his questions, Mr. Hockett responded to the effect that he "would rather shoot a grown man than a child."

> Officer McDavis then drew his service weapon from his holster and conspicuously completed a "press-check" of his weapon within Mr. Hockett's view and while pointing the weapon in the direction of two other officers.  Officer McDavis then rushed toward Mr. Hockett and grabbed him by his throat, pushed him backwards, which caused Mr. Hockett to fall over a short concrete wall.  Officer McDavis straddled Mr. Hockett on the ground and while he pointed his pistol at Mr. Hockett's face, he yelled at him "do you want a piece of me?  Do you want to shoot me?"  Two other officers moved toward Mr. Hockett and Officer McDavis and interrupted to the incident. [sic]  The two officers reported this incident to their supervisor.

> Shortly [after] this incident, Officer McDavis arrested Mr. Hockett and put him in the back of his patrol car.  He prepared an affidavit in support of his request for an assault warrant.  The affidavit contained false and misleading statements.  The commissioner refused to issue an assault warrant against Mr. Hockett, but Officer McDavis failed to indicate this refusal in his "Arrest Report."  He also used the same false and misleading statements in both his "Arrest Report" and his "Use of Force Report."

At his departmental-level hearing, Officer McDavis admitted that he prepared these documents to cover up his mistakes. Officer McDavis also made other statements at the hearing that lacked credibility. Officer McDavis either lost self-control or deliberately attacked Mr. Hockett. His testimony suggests that he does not appreciate the gravity of his behavior. A supervisor of Officer McDavis testified that she had received numerous complaints regarding Officer McDavis and counseled him about those complaints. Officer McDavis' disciplinary history includes two suspensions and a written reprimand.

Antwain Hockett is described by Officer Michael J. Robinson, one of the officers present on the scene on April 26, 2001, as being a "local thug" who between the years 1998 and 2000 had been arrested over 100 times for offenses ranging from aggravated burglary to assault, trespass, drug trafficking and evading arrest. It must be frustrating indeed for a front-line police officer to be confronted during an investigation with the sight of such a prolific repeat offender. The record discloses no evidence that on this occasion Mr. Hockett was the aggressor or otherwise threatening to Mr. McDavis, and, by his concession of the facts as found by the administrative law judge, the Civil Service Commission and the trial court, such a conclusion is rendered indisputable. When the facts of the case as found below are undisputed, they constitute the very substantial and material evidence needed to uphold the administrative law decision. Neither the drastic consequences of termination (*Mosley v. Tennessee Department of Commerce and Insurance*, 2004 WL 2663667) nor the unblemished character of prior service[2] (*Arthur L. Lynn v. Randy C. Camp, Commissioner*, No. M2002-02708-COA-R3-CV, 2003 WL 22401280 (Tenn.Ct.App.2003)) give this Court the power to disturb an administrative sanction that is warranted in law and justified in fact. The judgment of the trial court is in all respects affirmed, costs of appeal are assessed against Appellant, Roderick McDavis.

_____
WILLIAM B. CAIN, JUDGE

---

[2]Officer McDavis does not have such an unblemished record of prior services but has, in fact, suffered two prior disciplinary suspensions and a written reprimand.